**James C. SMITH, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 89–3224.

United States Court of Appeals, Eleventh Circuit.

March 1, 1990.

**1550**

Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Robert L. Baker, for defendant-appellant.

E. Gary Work, Jr., Pensacola, Fla., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's denial of the Government's motion under Federal Rule of Civil Procedure 50(b) for judgment notwithstanding the verdict.

## I. FACTS

### A. *Background*

James C. Smith was the founder, controlling stockholder and president of Smith

Plumbing and Heating, Inc. ("SPH") in Fort Walton Beach, Florida. SPH was a plumbing, heating, and air conditioning installation firm that served the southeast. From 1963 to 1973, Smith managed the business himself, soliciting contracts, hiring employees, and signing paychecks. By 1973 the business had grown to such an extent that Smith had to hire an executive vice-president and general manager, Ralph Rivers, to assist Smith in managing the business. Smith shared the duties of managing the firm with Rivers, who consulted Smith concerning major decisions. Smith, Rivers, and Selma Davis, the bookkeeper, were all authorized to sign company checks. Two signatures, however, were required on every SPH check.

Hazel Caine was responsible for preparing the payroll checks at SPH. Usually the payroll checks were pre-signed by Davis, prepared by Caine, and then signed by Rivers. SPH deducted payroll taxes from employees' weekly checks, and the payroll deductions were deposited into the First National Bank on the third business day after payday. SPH stopped making the payroll deduction deposits on July 1, 1974.

In early 1974, the construction industry entered a decline, and SPH began to have financial difficulties. By June of 1974, SPH's cash flow problem had become so severe that some of SPH's payroll checks were bouncing. In June 1974, Daniel Berry was assigned comptroller of SPH. Berry was concerned with the declining fortunes of SPH and, in early July 1974, tried to initiate discussions with Rivers and Smith about the company's financial problems. Berry first approached Rivers to discuss SPH's financial troubles, but Rivers rebuffed Berry. Berry then tried to approach Smith about the problems, but Smith told Berry that he had to go through Rivers. Later that month, after another attempt to go through Rivers, Berry succeeded in discussing the problems with Smith.[1] Smith then became directly involved in reviewing SPH's financial condition.

During the first week in August, Smith asked SPH's accountant, Julius Prokop, to review SPH's situation. Prokop recommended that the company file for protection under Chapter 11 of the Bankruptcy Code, and SPH petitioned for bankruptcy on August 13, 1974. At that time, SPH owed the Government $65,966 in payroll deductions from SPH's employees' checks. SPH never paid $47,963 of these taxes.

### B. Proceedings in the District Court

On July 19, 1983, the IRS notified Smith that it had been unable to collect the $47,-963 and that it was going to assess a penalty against Smith, pursuant to section 6672 of the Internal Revenue Code ("the Code"), as a person required to collect, account for, and pay over SPH's payroll withholdings. Smith paid the assessment and timely filed a claim for a refund. On May 22, 1988, Smith sued for a refund of the penalty assessment.

The district court held a jury trial on November 9–10, 1988. Smith testified that he could not pinpoint the date on which he became aware of SPH's failure to deposit the July payroll deductions, but he stated that he became aware "right in the middle of filing [for bankruptcy], right around the last of July, first of August." Rivers testified that he became aware of the tax problem at about the time that SPH decided to file for bankruptcy. Prokop testified that he first became concerned about the payroll taxes when he met with SPH's bankruptcy attorney Alan Rosenbloum. Berry testified that he became aware of the problem in the last five days before the bankruptcy.

Smith testified that at the time of the bankruptcy filing SPH had sufficient funds in its accounts to pay the delinquent taxes but not enough to pay all of SPH's debts. Smith stated that Prokop had told him that a payment to the IRS would be a voidable preference of one creditor and would be set aside by a bankruptcy court. Smith ac-

---

**1.** Berry testified that the problems that he brought to Smith's attention included SPH's failure to pay creditors and the bounced SPH checks, but did not include SPH's failure to deposit payroll deductions.

knowledged, however, that SPH had continued to meet its payroll during the first weeks of August and that it had prepaid its rent up to September 1, 1974.[2] Prokop testified that shortly before the bankruptcy petition was filed he and Smith met with an IRS agent named William Jones and that Smith and Prokop asked Jones to levy SPH's account in order to meet the delinquency. According to Prokop, Jones responded that the IRS was without power to levy SPH's account until after a delinquency was formally assessed.[3]

The Government moved for a directed verdict at the close of Smith's case. The court denied this motion. The Government again moved for a directed verdict at the close of its case. The district court directed a verdict on the issue of whether Smith was a "responsible person" within the meaning of Code section 6672. The court refused, however, to direct a verdict on the issue of whether Smith acted "willfully" within the meaning of section 6672. The district court orally ruled that Smith's testimony regarding Prokop's instruction not to pay the IRS, coupled with Jones's statement that the IRS would not levy SPH's account, raised an issue of willfulness for the jury.

The jury returned a verdict for Smith. On December 22, 1988, the district court entered a judgment for Smith in the amount of $51,855 plus interest. On January 9, 1989, the Government moved for a judgment notwithstanding the verdict under Rule 50(b). The district court denied this motion without opinion.

In this appeal we consider whether the district court erred in refusing to rule that

Smith's actions were willful as a matter of law under the evidence presented. We also consider whether SPH's bankruptcy affects Smith's liability under section 6672.

## II. STANDARD OF REVIEW

In reviewing a district court's denial of a motion for judgment notwithstanding the verdict, this Court views all of the evidence in the light most favorable to the nonmoving party. *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987). A motion for a directed verdict will be granted only if, viewing the evidence in its entirety and drawing all reasonable inferences in favor of the nonmoving party, no reasonable jury could reach a contrary verdict. *Id.* The moving party is entitled to a directed verdict if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

### A. *Liability Under Section 6672*

The Code and the regulations thereunder require employers to withhold from employees' paychecks the employees' share of FICA taxes and income taxes. *See Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251 (1978); 26 C.F.R. §§ 31.6011(a)–1, 31.6011(a)–4. Once the employer deducts funds from the employees' checks, the Government credits the employees for the funds withheld. Regardless of whether or not the employer pays the withheld taxes over to the Govern-

---

**2.** SPH's landlord, Sugarloaf Enterprises, was owned by Smith and his brother.

**3.** Jones was correct. Withholding tax returns must be filed by the end of the first month following the quarter. 26 C.F.R. § 31.607(a)–1(a). The IRS does not make an assessment until after the taxpayer files his return, *see* 26 U.S.C.A. § 6331. *But see* 26 U.S.C.A. § 6862 (authorizing immediate assessment of withholding taxes (this authority is not exercised by the IRS in cases of impending bankruptcy)), and property of the taxpayer does not become subject to levy and distraint until after an assessment by the IRS. *Myrick v. United*

States, 296 F.2d 312, 314 (5th Cir.1961); *see* 26 U.S.C.A. §§ 6321, 6322, 6331; 26 C.F.R. § 301.6331–1(a). Nevertheless, funds withheld from an employee's wages constitute a trust in favor of the United States, 26 U.S.C.A. § 7501(a), and must be deposited in a Federal Reserve bank or authorized financial institution within three banking days after the close of each quarter-monthly period, if the aggregate amount of withheld taxes for that period exceeds $2,000. *Thibodeau v. United States*, 828 F.2d 1499, 1502 n. 5 (11th Cir.1987); 26 C.F.R. § 31.6302(c)–1(a)(ii)(b).

ment, the Government's only recourse is against the employer. *Slodov,* 436 U.S. at 243, 98 S.Ct. at 1783. Withheld funds constitute a trust in favor of the United States from the time that the employer deducts them from employees' checks, and the employer is liable to the Government for any amounts withheld. *Id.;* Code § 7501(a).

Officers or employees responsible for the collection and payment of withholding taxes who willfully fail to do so are personally liable for a "penalty" equal to the amount of the delinquent taxes. *Slodov,* 436 U.S. at 244–45, 98 S.Ct. at 1783–84. Section 6672 of the Code provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Code § 6672. Section 6671(b) of the Code provides that "[t]he term 'person', as used in this subchapter, includes an officer or employee of a corporation ... who as such officer, [or] employee ... is under a duty to perform the act in respect of which the violation occurs." Code § 6671(b).

Section 6672 was designed to ensure that employers would comply with their obligation to withhold taxes and to pay the taxes withheld by subjecting the employers' officers responsible for the withholding and payment of taxes to personal liability. *Slodov,* 436 U.S. at 247, 98 S.Ct. at 1785. The section applies to any officer who is responsible for decisions regarding any portion of the collection, accounting for, or paying over of withholding taxes. *Id.* at 250, 98 S.Ct. at 1786.

■ In the instant case, the district court properly directed a verdict that Smith was a "responsible person" within the meaning of section 6672. The courts have generally taken a broad view of who constitutes a responsible person. *See id.* at 246–50, 98 S.Ct. at 1784–87; *Liddon v. United States,* 448 F.2d 509, 512 (5th Cir.1971) ("[L]iability for the penalty is not confined to 'disbursing officers' or officers with authority to draw or sign checks." (citation omitted)). In *Thibodeau,* this Court held that the taxpayer was a responsible person as a matter of law because he was the president, a director, and the resident agent of the employer during the relevant tax periods and because he was responsible for running the office, securing contracts, arranging financing, and conducting some hiring and firing. *Thibodeau,* 828 F.2d at 1504. In the present case, Smith was the president and controlling shareholder of SPH and shared management of the company with Rivers. Accordingly, Smith was a responsible person.

■ "Willfully" is defined as " 'meaning, in general, a voluntary, conscious and intentional act.' " *Id.* at 1505 (citing *Mazo v. United States,* 591 F.2d 1151, 1154 (5th Cir.1979)). The willfulness requirement of section 6672 is satisfied if there is evidence that the responsible officer had knowledge of payments to other creditors after he was aware of the failure to remit withholding taxes. *Id.*[4] The *Thibodeau* Court stated:

> Once withheld from employees' paychecks, the taxes constitute a special fund held in trust for the United States. Using these funds instead to finance the corporation not only increases the risk that the corporation will be unable to remit the taxes when due, but constitute a flagrant violation of the law. ·

*Id.* at 1506 (citations omitted).

Once it is established that a person is a responsible person, he has the burden of disproving willfulness. *Id.* at 1505. Smith, therefore, had the burden of disproving

---

**4.** It is not necessary for the evidence to show that a withholding tax return should have been filed at the time that the responsible officer knew that other creditors were being paid. Liability under section 6672 can arise from a mis-

use of withheld funds before the date when the corporation is required to pay over the funds. *Thibodeau,* 828 F.2d at 1505 (citing *Newsome v. United States,* 431 F.2d 742, 745–46 (5th Cir. 1970)).

willfulness in this case. *Id.* In the present case, Smith had to prove that he did not pay any creditors after he became aware of the withholding tax problem. Smith testified that SPH paid its employees every Friday up to the bankruptcy filing on Tuesday, August 13. Accordingly, SPH paid its employees on Friday, August 9. Smith, therefore, had to prove that he did not know of the payroll tax problem until after August 9, 1974.

Smith testified that he became aware of SPH's failure to remit its payroll deductions at the end of July or in the first week of August, 1974. This testimony was corroborated by the testimony of Smith's employees, who worked with Smith in reviewing SPH's financial situation before the bankruptcy filing. Berry testified that he became aware of the problem in the last five days before the bankruptcy filing. Prokop testified that he first became concerned about the payroll taxes when he went to see SPH's bankruptcy attorney, Alan Rosenbloum. Prokop did not, however, say what day he met with Rosenbloum. Rivers testified that he first became aware of the withholding tax problem at the time that SPH decided to file for bankruptcy, but did not say whether this was before or after Friday, August 9, when SPH paid its employees. This testimony is insufficient as a matter of law to disprove willfulness. None of Smith's witnesses testified that Smith did not know of the withholding tax problem until after Friday, August 9, when SPH paid its employees. Accordingly, because no reasonable jury could find that Smith carried his burden of proof on the issue of willfulness, the Government was entitled to a directed verdict on that issue.[5]

The district court denied the Government's motion for a directed verdict on the ground that Prokop's advice to Smith that any payment to the IRS would be set aside by the Bankruptcy Court, coupled with Jones's refusal to seize the money for the IRS, negated willfulness. This finding was erroneous. Prokop's advice to Smith that any payment to the IRS would be a voidable transfer under the Bankruptcy Code does not constitute a defense to willfulness. In *Newsome v. United States*, 431 F.2d 742, 747–48 (5th Cir.1970), the Fifth Circuit rejected a taxpayer's argument that he did not act willfully because he relied on the advice of an attorney. The Court held, "Newsome was not advised, nor did he interpret the advice as meaning, that he had been justified in using withheld taxes ... to pay other creditors or that he should continue to pay creditors with funds then available or that might become available instead of paying the government." *Id.* Similarly, in the present case, neither Prokop nor Jones advised Smith that he could use the money in SPH's account to pay creditors other than the Government.

### B. *Smith's Arguments on Appeal*

Smith dedicates his entire brief to an argument that he did not act willfully under section 6672 because he filed for bankruptcy shortly after he discovered the problem concerning SPH's withholdings.[6] Smith argues that because SPH had sufficient funds available to pay the withholdings at the time that it filed for bankruptcy, Smith did not prefer any creditor over the Government. This argument is meritless. The fact that SPH had sufficient funds on hand to meet its withholding tax obligations is insufficient to disprove willfulness. In fact, this Court has held that the failure to segregate withholdings from

5. The *Thibodeau* court stated that "[t]he willfulness requirement is also met if the responsible officer shows a 'reckless disregard of a known or obvious risk that trust funds may not be remitted to the government....'" *Thibodeau*, 828 F.2d at 1505. Smith recklessly disregarded an obvious risk that the government would not receive the withholding taxes to which it was entitled when he refused to listen to Berry's pleas that Smith look into SPH's financial problems. Smith cannot avoid liability by showing

that he closed his eyes to SPH's problems. Accordingly, Smith also was willful because he disregarded the risks brought to his attention by Berry.

6. Liability under section 6672 is not dischargeable in bankruptcy. *United States v. Sotelo*, 436 U.S. 268, 277, 98 S.Ct. 1795, 1801, 56 L.Ed.2d 275 (1978).

other corporate assets, as SPH failed to do in this case, is an indication of willfulness. *Thibodeau*, 828 F.2d at 1506. The *Thibodeau* Court held that "[i]t is also irrelevant that the corporation declared bankruptcy before the taxes were actually due." *Id.*[7]

■ Finally, Smith argues that because the IRS approved SPH's reorganization plan, it cannot now move against him under section 6672. This argument misconceives the purpose of section 6672, which is to give the Government a second person to turn to in the event that withholding taxes prove uncollectible from the employer. *See Slodov*, 436 U.S. at 244–45, 98 S.Ct. at 1783–84; *United States v. Sotelo*, 436 U.S. 268, 278–79, 98 S.Ct. 1795, 1801–02, 56 L.Ed.2d 275 (1978). The fact that the Government had to agree to collect from SPH's bankruptcy estate an amount that is less than the total withholding tax owed by SPH is what gives rise to Smith's liability under section 6672 in the first place. *Slodov*, 436 U.S. at 243–45, 98 S.Ct. at 1783–84.[8] Accordingly, Smith's argument that SPH's bankruptcy blocks the Government's claim under section 6672 is meritless.

## IV. CONCLUSION

We REVERSE and REMAND for entry of judgment notwithstanding the verdict in favor of the Government.

REVERSED.

---

7. Contrary to Smith's argument on appeal, this is not a case where an employer simply filed for bankruptcy, without paying any creditors, upon discovering a withholding tax delinquency. We do not reach the issue of an officer's liability under section 6672 in such a case.

8. To the extent that the government is able ultimately to recover the delinquent withholdings from SPH, Smith's penalty under section 6672 will be abated. *See* Internal Revenue Service Policy Statement P–5–60 (available on WESTLAW, FTX–IRM database), (available on LEXIS (FedTax; Manual)).